UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF JAMES BARRICK and PAMELA TAYLOR, individually and as successor in interest to the Estate of James Barrick,<br><br>Plaintiffs,<br>v.<br><br>THE COUNTY OF SAN JOAQUIN, THE SAN JOAQUIN COUNTY SHERRIF'S OFFICE, CINDY BORGES and JOHNNIE MORRIS,<br><br>Defendants. | No. 2:18-cv-02216-MCE-DB<br><br><br><br><br>**ORDER** |

Through the present lawsuit, the Estate of James Barrick along with James Barrick's mother, Pamela Taylor ("Plaintiffs") seek damages for civil rights violations, including cruel and unusual punishment, lack of due process, and equal protection violations, as a result of the suicide of James Barrick ("Decedent") while a pretrial detainee of San Joaquin County on October 1, 2017. Plaintiffs also allege concurrent state law claims.

Presently before the Court is Plaintiffs' Motion to Amend the Complaint in this matter pursuant to Federal Rules of Civil Procedure 15(a).[1] Plaintiffs' original lawsuit

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

1    was filed on August 24, 2018.  The Court's Initial Scheduling Order, issued that same
2    day, called for fact discovery to be completed within 365 days, or by August 24, 2019.
3    ECF No. 3.  On July 8, 2019, both parties lodged a stipulation with the Court which
4    requested, <u>inter alia</u>, that discovery be extended to November 14, 2019, due to the
5    heavy trial schedule of both counsel and the need to take multiple out-of-district
6    depositions. ECF No. 10.  That Stipulation was approved by the Court on July 19, 2019,
7    Plaintiffs filed the motion now before the Court, which seeks to name two individuals,
8    Cindy Borges and Johnnie Morris, as additional defendants, on October 31, 2019, prior
9    to the extended deadline for completion of fact discovery.  ECF No. 14.
10          Plaintiffs' initial Complaint named only Sheriff Steve Moore as an individual
11   Defendant in addition to the County of San Joaquin and the San Joaquin County
12   Sheriff's Department.  According to Plaintiffs, it was only through discovery that they
13   gained an understanding of the individuals involved in the care and monitoring of
14   Decedent prior to his death, the applicable role of each individual, and the policies that
15   guided their actions.  Plaintiffs' proposed First Amended Complaint ("FAC") deletes
16   Sheriff Moore as a party to the lawsuit, but as indicated above seeks to add Borges and
17   Morris as Defendants.
18          With respect to Ms. Borges, Plaintiff Taylor admits she talked to Ms. Borges
19   before her son's suicide, with Borges allegedly assuring Taylor that the jail already "knew
20   about" her son and presumably the risk that incarceration posed given his suicidal
21   tendencies.  Plaintiffs assert, however, that they were not aware until well after suit was
22   filed of the County's "operational policy applicable in scenarios where a family member
23   alerted jail staff to a detainee's risk for suicidal behavior."  Pls.' Reply, 2: 6-10.  It was
24   only after "gaining a full understanding" of such policies and procedures, which
25   apparently included failure to house individuals in a suicide-proof cell and take other
26   precautionary measures even in the wake of such information, that Plaintiffs deemed it
27   necessary to add Ms. Borges as a Defendant.
28   ///

As to Johnnie Morris, while the County's November 6, 2018 Initial Disclosure under Rule 26(a)(1) listed Morris as an individual with information relevant to this lawsuit, that Disclosure described him as only "present during resuscitation attempts." See Ex. A to the Declaration of Mark Berry, ECF No. 18-1. Plaintiffs assert there was no mention that Morris was the correctional officer responsible for monitoring Decedent during the last hours of his life. Plaintiffs subsequently learned, apparently through discovery, that Morris had allegedly failed to properly monitor Decedent by checking on him periodically. This conduct, according to the proposed FAC, was inconsistent with written departmental policy for checking on sleeping inmates/detainees during the early morning hours when Decedent's suicide occurred. FAC, ¶ 22. Plaintiffs assert that had the County's written policies been followed by Morris, and if Decedent had been monitored as he should have been, his death could have been prevented. Id. at ¶ 18. In essence, Plaintiffs assert that adding Morris (as well as Borges) became evident once they were "able to compare formal county policy with the deposition testimony of key individuals." Pls.' Reply, ECF No. 19, 3:25-27.

In opposing the Motion, counsel for the County Defendants, while not objecting to Sheriff Moore's dismissal, does take issue with amending the lawsuit at this juncture to add Borges and Morris. Defense counsel asserts, as discussed above, that Plaintiffs had long known the identities of Borges and Morris and have failed to justify their delay in not moving to amend earlier. The County further asserts that it would be prejudicial to add those individuals now since doing so may necessitate the retention of additional experts to testify as to the appropriate standard of care.[2]

Rule 15(a), under which Plaintiff's Motion is brought, provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The policy of favoring amendments to pleadings, as evinced by Rule 15(a), "should be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Once a

---

[2] The County further asserts that amendment would be futile in any event because Borges and Morris are purportedly entitled to qualified immunity. That argument, however, is a substantive matter going to the merits beyond the purview of whether amendment should be permitted in the first place.

3

district court has filed a pretrial scheduling order pursuant to Rule 16, that Rule's standards control. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). Prior to the final pretrial conference in this matter, which has not yet been scheduled before the undersigned, the Court can modify its scheduling order upon a showing of "good cause." See Fed. R. Civ. P. 16(b).

As indicated above, the Court issued its Pretrial Scheduling Order on August 24, 2018, the same day Plaintiffs' Complaint was filed. One could therefore argue that on a technical basis Plaintiffs have to satisfy the more rigorous "good cause" standard under Rule 16(b) despite the fact that the Court's Scheduling Order was issued at the very onset of the case, and further provided no restriction upon the parties' initial ability to amend their pleadings. Nonetheless, because the Court believes that Plaintiffs have satisfied the "good cause" standard in any event, any distinction between Rule 15(a) and Rule 16(b) is of no moment in this particular matter.

"Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. In explaining this standard, the Ninth Circuit has stated that:

> [A] district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

Id. (citations omitted).

In the present matter it appears that Plaintiffs have exercised the required diligence. Due to the trial schedule of counsel for both parties, as well as the number of depositions involved, it appears both parties realized discovery had to be extended and therefore stipulated to continue fact discovery from August 14, 2019 to November 4,

2019. Although not completely clear from the papers submitted, given that stipulation most of the necessary discovery was probably completed after July 19, 2019, when the Court approved the parties' requested extension. The deposition of Plaintiff Taylor, for example, was not taken by defense counsel until November 8, 2019, just days before discovery was scheduled to close.

Plaintiffs filed the present motion on October 31, 2019, some two weeks prior to the November 14, 2019 discovery cutoff, after discovery obtained during the previous months showed the alleged culpability of Borges and Morris as indicated above. Under the circumstances present, the Court cannot conclude that Plaintiffs were not suitably diligent. Nor is the Court persuaded by the only alleged prejudice identified by Plaintiffs in permitting the amendment, since, as Plaintiffs point out, expert analysis as to the standard of care applicable to both Morris and Borges would probably have been necessary in any event with respect to already existing claims against the County for negligent supervision.

For all the foregoing reasons, Plaintiffs' Motion to Amend Complaint (ECF No. 14) is therefore GRANTED.[3] Plaintiffs are directed to file their Proposed First Amended Complaint not later than ten (10) days after the date this Order is electronically filed.

IT IS SO ORDERED.

Dated: May 12, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[3] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).