WILLIAM L. SCHMIDT, SBN 206870
Email: legal.schmidt@gmail.com
JEFFREY W. EISINGER, SBN 109299
Email: legal.schmidt.jeff@gmail.com
WILLIAM L. SCHMIDT, ATTORNEY AT LAW, P.C.
PO Box 25001
Fresno, CA 93729
Telephone 559.261.2222
Facsimile 559.436.8163

Attorney for Plaintiffs:
PAMELA TAYLOR and the ESTATE
Of JAMES BARRICK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF JAMES BARRICK AND PAMELA TAYLOR, individually and as successor in interest to the Estate of James Barrick,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE COUNTY of SAN JOAQUIN, THE SAN JOAQUIN COUNTY SHERIFF'S OFFICE, CINDY BORGES and JOHNNIE MORRIS,<br><br>　　　　Defendants. | **Case No.: 2:18-cv-02216-MCE-DB**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Violation of 14th Amendment - Cruel And Unusual Punishment<br><br>2. Negligence<br><br>3. Govt. Code §§844.6 & 845.6<br><br>4. Municipal Liability for Unconstitutional Custom, Practice, or Policy; Failure to Train, and Supervisory Liability<br><br>**JURY TRIAL DEMANDED** |

[1]

## INTRODUCTION

This lawsuit seeks to recover damages for civil rights violations including cruel and unusual punishment, lack of due process, and lack of equal protection pursuant to the Fourteenth Amendment to the U.S. Constitution. The Plaintiffs also assert state law claims.

## JURISDICTION

1. This Complaint asserts causes of action arising under the U.S. Constitution and the laws of the State of California. Pursuant to 42 U.S.C. §1983, the Plaintiffs allege causes of action for lack of due process, equal protection, and cruel and unusual punishment, all in violation of the Fourteenth Amendment to the U.S. Constitution, resulting in the wrongful death of James Barrick. These claims, along with the state law claims, all arise out of a series of events which culminated in the wrongful death of James Barrick on October 1, 2017.

2. This court has subject matter jurisdiction over the claims of the Plaintiffs pursuant to 28 U.S.C. §1331. The Plaintiffs' state law claims derive from the same nucleus of operative facts. The state law claims are so related to the federal claims over which this Court has original jurisdiction that it is part of the same case or controversy under Article III of the U.S. Constitution. Thus, this Court may exercise supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

## VENUE

3. A substantial part of the acts and omissions giving rise to the Plaintiffs' claims occurred in San Joaquin County, within the Eastern District of California. Venue is thus proper in this

[ 2 ]

judicial district pursuant to 28 U.S.C. §1391(b).

## THE PARTIES

4. Plaintiff PAMELA TAYLOR ("TAYLOR") is the mother of the decedent James Barrick and is a citizen of the United States of America and the State of California. James Barrick did not have any children and was not married at the time of his death. He died intestate. Plaintiff TAYLOR brings this action in her individual capacity and as the successor in interest of the ESTATE OF JAMES BARRICK for the federal and state law violations set forth herein. Plaintiff TAYLOR is informed and believes that no other person has a superior right to commence any action or proceeding or to be substituted for the ESTATE OF JAMES BARRICK in this proceeding. No proceeding is now pending in the State of California for the administration of the ESTATE OF JAMES BARRICK.

5. Defendant SAN JOAQUIN COUNTY ("SAN JOAQUIN") is a governmental entity created under the laws of the State of California. Defendant SAN JOAQUIN COUNTY SHERIFF'S OFFICE ("SJSO") is an agency within Defendant SAN JOAQUIN and subject to its control. Defendant JOHNNIE MORRIS ("MORRIS") is employed as a correctional officer by Defendants SAN JOAQUIN and SJSO and is sued in his individual capacity. Defendant CINDY BORGES ("BORGES") is employed in the Correctional Health Care department in the jail operated by SAN JOAQUIN and SJSO and is sued in her individual capacity.

6. The Plaintiffs allege that each of the Defendants were responsible for and caused the acts and injuries alleged herein. The Plaintiffs allege that the Defendants were, at all times mentioned herein, employees, agents or contractors of each other and were responsible for conditions and/or events at the San Joaquin County jail which resulted in the death of James Barrick.

These Defendants were charged with the supervision, admission, management, monitoring, care and control of the detainees and inmates in the San Joaquin County jail. They were deliberately indifferent to the medical needs and safety of James Barrick, failed to provide or assist him in obtaining appropriate psychiatric, psychological, and medical care, failed to take measures to prevent him from committing suicide, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled, and/or ordered other Defendants to engage in such conduct.

7. Whether these Defendants were on site at the moment James Barrick hung himself is not determinative of the liability of these Defendants. Rather, their liability flows from their involvement in the care and supervision of James Barrick during his detention, the notice of his mental condition that was amply provided, and the failure to take any steps that would have protected him from harm as set forth herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. The Plaintiffs filed timely claims with the County of San Joaquin. The County of San Joaquin rejected the claims of TAYLOR and THE ESTATE OF JAMES BARRICK on February 15, 2018.

## GENERAL ALLEGATIONS

9. The Plaintiffs repeat and reallege each allegation in Paragraphs 1 through 8 of this Complaint as though fully set forth at this point.

10. The Plaintiffs allege that the conduct of each Defendant deprived Barrick of his constitutional rights to life, to due process and equal protection under the law, to medical and mental

health care for his serious, but treatable, mental health needs, as well as proper custodial care and supervision, and caused him to suffer grievous harm and physical injuries prior to his death, and ultimately caused his death while he was in the custody of the Defendants.

11. Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did do so, by authorizing, acquiescing, condoning, acting, omitting, or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain adequate training, supervision, and staffing with deliberate indifference to the rights of Barrick and the Plaintiffs, by failing to maintain proper and adequate policies, procedures, and protocols, by failing to ensure Barrick was given effective medical and mental health care, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers, mental health providers, and employees under their direction and control.

12. Whenever and wherever reference is made in this complaint to any act of the Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly, or severally.

13. In 2017, Barrick was arrested for vandalism in San Joaquin County.  Once his mother learned of his incarceration, she contacted jail employees repeatedly to let them know that her son had mental health issues, including depression, and was a suicide risk.

14. When she contacted the jail about her son's mental health issues and the possibility that he would harm himself, Barrick's mother was told by Defendant BORGES via telephone that "We know about him." in reference to her son.  Barrick's mother believes that the purpose of

this statement was to convey that the jail staff was cognizant of the risk that incarceration posed to her son and that steps would be taken to keep him from harming himself.  The reality is that neither BORGES nor any other jail employee did anything in response to TAYLOR's calls.  This was a violation of jail policy.

15. Barrick had a history of attempting suicide and had been likewise diagnosed as having multiple mental health disorders, including depression.

16. Unfortunately, the reality is that the Defendants did absolutely nothing to prevent Barrick from being able to take his life while he was under their control.

17. The Sheriff's Department was required to provide mental health treatment to Barrick while he was under their care and custody.  The Plaintiffs are informed and believe that Defendants essentially ignored the pleas of Barrick's mother, instead providing him with deficient mental health treatment which did not adequately address his suicidal tendencies.  The treatment fell below acceptable constitutional and statutory standards.   As trained professionals, the Defendants have knowledge that suicidal incarcerated individuals require special care. They know that inmates such as Barrick should be afforded special suicide-proof housing.  When Barrick was taken into custody by the Defendants and held in jail against his will, they assumed a duty to protect his due process rights.  Because the SJSO and SAN JOAQUIN put Barrick in danger, they were required to protect him to the extent of ameliorating further risk.  Instead of protecting Barrick though, the deliberate indifference of these Defendants resulted in a callous disregard for his welfare and thus a failure in their obligation to protect his liberty interests, including the right to adequate healthcare.

18. The Plaintiffs allege on information and belief that on the morning of October 1, 2017 Barrick was not being properly monitored by Defendant MORRIS during the early morning

hours and was eventually found hanging from a vent by a bed sheet in his cell shortly after 4:00 a.m.  Barrick was ultimately declared dead at 4:40 a.m.  The Plaintiffs believe that Barrick's suicide could have been prevented if MORRIS had acted in compliance with written policy.  The Plaintiffs believe that MORRIS, in failing to verify that the decedent was in his bunk and breathing, acted consistently with the actual jail practice permitted by Defendants SJSO and SAN JOAQUIN, which was contrary to the written policy.

19. Given Barrick's known background of suicide attempts, the multiple warnings to jail staff by his mother regarding his propensity for suicide, and other indicators, the Defendants had more than ample knowledge that Barrick posed a significant risk to himself.   Their actions and/or omissions resulted in the pain and suffering of the decedent, followed by his death, as well as the familial loss of a son now experienced by his mother, PAMELA TAYLOR.

### FIRST CAUSE OF ACTION

**Claim for Violation of 14th Amendment by Defendants BORGES and MORRIS – Cruel and Unusual Punishment**

20. The Plaintiffs repeat and reallege each allegation in Paragraphs 1 through 19 of this Complaint with the same force and effect as though fully set forth at this point.

21. The Defendants were deliberately indifferent to the well-being of Barrick.  Said Defendants, particularly BORGES, were on notice of Barrick's history of suicide attempts, based on the warnings delivered by his mother.  While her son was in the San Joaquin County jail, Plaintiff communicated with the agents, employees or contractors of the Defendants who were responsible for the day-to-day operation of the jail.  Her calls put the Defendants on actual notice

that Barrick was at risk of harming himself.

22. In spite of having knowledge of all of these danger signs, the Defendants clearly manifested their deliberate indifference to the well-being of Barrick.  The deliberate, reckless, and callous indifference of the Defendants was specifically exhibited by the failure to appropriately respond to the notifications from the decedent's mother, but also by the failure to place Barrick in a hang-proof cell and to properly monitor him.  If the San Joaquin County jail was not designed to protect suicidal inmates such as Barrick from themselves, the Defendants could have taken other steps to provide a constitutionally acceptable environment.  Instead, the Defendants did nothing.  As a result of the deliberate, reckless, and callous indifference of the Defendants, Barrick was left vulnerable to his own well-documented mental condition in an environment that offered him totally inadequate protection against himself.  Predictably, he was easily able to take his own life in his cell due to the deliberate indifference and reckless disregard of the Defendants, including the willful failure of Defendant MORRIS to follow written department policy when checking on sleeping inmates/detainees during the early morning hours.

23. The conduct of the Defendants was cruel and unusual punishment of a detainee in violation of the 14th Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a deliberate indifference, as well as reckless and callous disregard, for the rights and safety of Barrick and therefore warrants an award of exemplary and punitive damages to the Plaintiffs.  As is set forth hereinabove, the Defendants had actual notice that Barrick had mental health issues and suicidal tendencies. These Defendants further violated the Plaintiffs' rights to familial association and companionship and caused the wrongful death of the decedent.  Accordingly, the Defendants are liable to the Plaintiffs for compensatory, including general and special damages, as well as punitive damages, under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION

**Negligence Claim Against Defendants SJSO, SANJOAQUIN, BORGES, and MORRIS**

24. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 23 of this Complaint with the same force and effect as though fully set forth at this point.

25. The Defendants owed a duty to monitor and protect Barrick as the sole providers for his care while he was an innocent detainee in the San Joaquin County Jail. The Plaintiffs are informed and believe that the Defendants had access to information pertaining to the mental problems experienced by Barrick and his history of suicide attempts, particularly via his mother. The Defendants, particularly BORGES, were clearly on notice of the risk that Barrick posed to himself. The Plaintiffs contend that the Defendants were negligent in the performance of their duty to monitor and protect Barrick without due concern for his known mental state and failed to use reasonable and proper care and skill to keep him from killing himself, thus breaching their duty. This includes ignoring his mental health needs, failing to house him in a suicide-proof cell, and failing to follow department policy as far as welfare checks on inmates during the night hours. Thus, MORRIS, BORGES, and the DOE Defendants, and their employees, agents, and contractors are responsible for the pain and suffering experienced by Barrick, culminating in his death, and the loss by TAYLOR of the companionship of her son.

## THIRD CAUSE OF ACTION

**California Government Code §§ 844.6 and 845.6 Claim Against SJSO, BORGES, and MORRIS**

[ 9 ]

26. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 25 of this Complaint with the same force and effect as though fully set forth at this point.

27. Pursuant to California Government Code §§ 844.6 and 845.6, the Defendant and the DOE Defendants had a duty to monitor, care for, and respond to the persons under their custody, supervision and control.

28. The Defendants, including BORGES, knew, or had reason to know, that Barrick was in need of immediate care while housed as a detainee in the jail and failed to take reasonable action to summon or provide competent, immediate, ongoing, and reasonable care.  This included all prudent measures which could have been implemented to keep Barrick from having an opportunity to act out on his suicidal tendencies, such as providing needed mental health services, keeping him in a cell which did not provide the means for a detainee to commit suicide, or providing more intensive monitoring.  The Plaintiffs allege on information and belief that the Defendants, including BORGES, had actual knowledge of Barrick's immediate need of mental health care and failed to take reasonable action themselves and failed to summon medical care.  They choose not to house Barrick in a suicide proof room, and they chose not to put him on a suicide watch.  And Defendant MORRIS failed to follow written department policy in monitoring Barrick's status during the time he was hanging himself.  They created the perfect storm which precipitated his suicide. The Defendants knew Barrick had an immediate need for medical care requiring them to intervene and prevent his suicide and they failed in their responsibility to see that this care was provided.

29. As a result of the Defendants' breach of said duty to act reasonably in the provision of safety for Barrick, the Plaintiffs have suffered damages as set forth herein and incorporated by reference.

## FOURTH CAUSE OF ACTION

## Municipal and Supervisory Liability Against SAN JOAQUIN and the SJSO

30. The Plaintiffs repeat and reallege each allegation in Paragraphs 1 through 29 of this Complaint with the same force and effect as though fully set forth at this point.

31. As against Defendants SAN JOAQUIN and the SJSO, the Plaintiffs allege that the acts and/or omissions set forth in this complaint are indicative of a course of conduct by employees of Defendants SAN JOAQUIN and the SJSO, tantamount to a custom, policy, or repeated practice of conditioning and tacitly encouraging deliberate indifference to the physical and mental well-being of inmates and their safety and disregard for the constitutional rights of citizens such as the decedent.

32. The unconstitutional, deliberate indifference to the health and safety of inmates such as the decedent is within the custom, policy or repeated practice of Defendants SAN JOAQUIN and the SJSO, and was ratified by each of them via various supervisorial officials.  Specifically, it appears to have been standard practice for health care providers to do nothing when notified by family members of detainees of the likelihood that the detainee could harm himself.  And, it appears to have been standard practice for correctional officers working during the night / early morning when inmates were typically asleep to deviate from written department policy when doing informal counts / welfare checks and not verify that the inmate/detainee was in his bed and breathing.  The failure to properly monitor health care workers and correctional officers in the performance of their duties to be sure that they acted in compliance with written policy of

the jail lead to the implicit ratification of these practices which directly placed the life of the decedent unnecessarily at risk.

33. On information and belief, the Plaintiffs allege that neither BORGES nor MORRIS, who were deliberately indifferent to the health and safety of the decedent and other detainees/inmates, were disciplined in any way. This ratification was illustrative of the deliberate indifference to the foreseeable effects and consequences of the policies and practices with respect to the constitutional rights of the decedent and other individuals similarly situated.

34. By perpetuating, sanctioning, tolerating, and ratifying this outrageous conduct, SAN JOAQUIN and the SJSO were affirmatively linked to, and played a substantial factor in, the death of the decedent. Had SJSO health care and correctional employees been properly trained, had official policies been enforced, and had employees been disciplined for not complying therewith, the death of the decedent could have been avoided.

35. Accordingly, these Defendants are liable to the Plaintiffs for compensatory and punitive damages under 42 U.S.C. §1983. These Defendants also have supervisory liability pursuant to the state law claims asserted herein.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully seek relief as follows:

1. For compensatory damages, including general and special damages, under federal and state law, in the amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial sufficient to punish and deter;

3. For reasonable costs and attorney's fees pursuant to 42 U.S.C. 1983, and/or any other applicable statute, regulation, ordinance, or law, whether state or federal, that provides for reasonable costs and/or attorney's fees;

4. For pre-judgment interest according to law; and

5. For such other and further relief as may be deemed just and proper by this Court.

**DEMAND FOR JURY TRIAL**

The Plaintiffs do hereby demand a jury trial.

Dated: May 21, 2020              William L. Schmidt, Attorney at Law, P.C.

By:    /s/ Jeffrey W. Eisinger
       Jeffrey W. Eisinger,
       Attorney for Plaintiffs